## FRANCIS A. TAYLOR *vs.* THE, C. M. ROBERTSON COMPANY.

Second Judicial District, Norwich, April Term, 1912.

PRENTICE, THAYER, RORABACK, GEORGE W. WHEELER and RALPH WHEELER, Js.

A servant of the defendant summoned the plaintiff, a physician, to attend *McD*, a fellow workman who had been seriously injured while engaged in his night work in the defendant's mill. He continued to care for *McD* for a period of two months. A few days after the accident one *C*, the defendant's bookkeeper, visited the plaintiff to obtain information for the defendant regarding *McD's* injuries, in order to make report thereof to an insurance company, and in the course of the interview told the plaintiff that the defendant would be responsible for his services; and the defendant's president knew of said injuries and that the plaintiff was attending *McD*, and frequently talked with the plaintiff about *McD's* condition. The plaintiff having rendered to the defendant a bill for his services, sent by mail in a letter addressed to the defendant, received in reply a letter upon the defendant's letter-head, with the defendant's name thereto signed by *C*, requesting a detailed bill, and stating that "if you can modify this bill in any way it would be much appreciated as it looks now as though we would be forced to stand the full charge ourselves." The only evidence offered by the defendant in its behalf was that its board of directors had never voted to authorize or to ratify the employment of the plaintiff or to pay for his services. *Held* that the trial court was justified in finding that the defendant knew of *C's* representation to the plaintiff, that the plaintiff's letter was received by the officer in charge of the defendant's business, that the reply letter was written by *C* by the direction and authority of such officer, that the plaintiff rendered his services under circumstances which justified him in believing that the defendant would pay him therefor, and that the officers of the defendant had knowledge of these circumstances, and in holding upon such facts found that the defendant had obligated itself to pay the plaintiff for his services by the assumption as its own of the assurance of its responsibility for the care of its servant which was given by its bookkeeper and upon the faith of which the plaintiff acted.

The testimony disclosing *C's* conversation with the plaintiff, the interviews between the plaintiff and the defendant's president, and the contents of the letter above recited, was properly received as having a material bearing upon the defendant's knowledge and conduct.

Argued May 1st—decided June 13th, 1912.

ACTION by a physician to recover the reasonable worth of professional services, brought to and tried by the Court of Common Pleas in New London County, *Waller, J.;* facts found and judgment rendered for the plaintiff for $275, and an appeal by the defendant. *No error.*

The plaintiff is a practicing physican. The defendant is a corporation operating a mill for the manufacture of paper board. One McDiarmid, a boy about seventeen years of age, worked in the mill as a helper or back tender. The mill was operated at night, and McDiarmid was a member of the night force. While engaged in his work on the night of October 13th, 1910, he was found drawn under a large belt, and seriously injured. A fellow workman hastened to the plaintiff's house, near by, and summoned him to the injured boy's aid. The plaintiff responded, cared for the boy, later removed him to his, the boy's, home, and attended him professionally during the following two months.

Within a few days after the accident, and while the plaintiff was attending the boy, one Church, a bookkeeper in the defendant's employ at the mill, came to the plaintiff to obtain information in regard to the extent of the boy's injuries, in order to make report to an insurance company, and during the interview told the plaintiff that the defendant would be responsible for the payment of his services. The president of the defendant knew of the injuries to the boy, and that the plaintiff was attending him professionally, and upon different occasions during the period of this attendance talked with the plaintiff about the boy's condition and prospects of recovery. After the services had been rendered, the plaintiff rendered to the defendant his bill therefor, which was sent by mail in a letter addressed to the defendant. In reply, the plaintiff in a few days received a letter upon the defendant's letter-head, and

reading as follows, in addition to the date and formal address: "It would oblige us very much if you would render us a detailed bill of medical attendance to Earl McDiarmid. If you can modify this bill in any way it would be much appreciated as it looks now as though we would be forced to stand the full charge ourselves. Thanking you in advance for the favor, we remain, Yours truly, The C. M. Robertson Co.—J. E. Church." Church, whose name appears written under that of the corporation, is the same Church already referred to. He held no other position with the corporation than that of bookkeeper, and the record does not disclose that he had any special authority to act for the corporation in the matter of McDiarmid, or in the provision of medical or surgical assistance for the defendant's employees. The defendant's board of directors had never taken action empowering any of its agents, employees, or officers to employ the plaintiff to attend McDiarmid, or to ratify such employment, or to pay for services so rendered.

Neither Church nor the president of the defendant testified upon the trial. The only evidence offered in its behalf was that of its secretary, to the effect that there had been no directors' vote as stated, that Church's duties were simply those of bookkeeper, and that those of the employee who summoned the plaintiff on the night of the accident were those of an ordinary worker tending a machine.

The trial court in the two concluding paragraphs of its finding states that said Church represented to the plaintiff that the defendant would be responsible for his services; that this representation was known to the officers of the defendant; that the bill, mailed by the plaintiff addressed to the defendant, was received by the officer in charge of the company; that the reply letter was written by Church by direction and authority

of such officer, and that it appeared from the evidence that the plaintiff rendered the services in question under circumstances which justified him in believing that the defendant would pay for the same, and that the officers of the defendant had knowledge of these circumstances.

The testimony disclosing Church's conversation with the plaintiff, the interviews between the plaintiff and the defendant's president, and the contents of the letter recited above were received against the objection of the defendant, upon the ground of want of authority shown on the part of Church and the president, respectively, to act for or bind the corporation in the premises.

The services rendered were reasonably worth the amount for which judgment was rendered.

*Donald G. Perkins* and *Edmund W. Perkins,* for the appellant (defendant).

*Hadlai A. Hull* and *John H. Barnes,* for the appellee (plaintiff).

PRENTICE, J. The facts stated in the two concluding paragraphs of the finding having been found, the court's judgment was properly rendered. The situation thus presented is in such striking analogy to that in *General Hospital Society* v. *New Haven Rendering Co.,* 79 Conn. 581, 65 Atl. 1065, that the reasoning by which the judgment in that case was supported is conclusive of the correctness of this. It need not be repeated. The foundation of the defendant's liability is not to be found in any express promise or direct assumption of obligation. The court has found none, and has carefully avoided resting its judgment upon one. What the court has found, and what it made the basis of its judgment,

is certain knowledge and conduct on the part of the defendant leading to the ultimate conclusion that it had assumed as its own the assurance of its responsibility for the care of its servant given by its bookkeeper to the plaintiff, and upon the faith of which he acted. *General Hospital Society* v. *New Haven Rendering Co.*, 79 Conn. 581, 586, 65 Atl. 1065.

The testimony objected to was properly received. No part of it, of course, was competent to show an express promise by the defendant to pay for the plaintiff's services, or an obligation to do so directly assumed by ratification or otherwise, since no authority to make such promise, or to incur such obligation, was shown in any person who undertook to speak upon the subject. But it was neither received nor used for any such purpose. Its relevancy arose from the fact that it had, as was shown in the case cited, a material bearing upon the pertinent matter of knowledge and conduct, and as furnishing a basis for material inferences in respect thereto. Each matter was "one link in a chain of circumstances which establishes a liability in the defendant not founded on its direct promise."

Upon the evidence, the court's ultimate conclusion, embodied in the last two paragraphs of the finding, which we are asked to correct, was justified. The opinion in the case cited sufficiently demonstrates that fact. One other paragraph of the finding which we are asked to correct is fully supported by the testimony. The changes asked for by reason of the court's failure to incorporate in the finding certain paragraphs of the defendant's draft-finding would not, if made, materially alter the situation as we have presented it. The requests to correct are denied.

There is no error.

In this opinion the other judges concurred.